UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JACKELINE BARBOSA, MARK ANDERSON, and DOUGLASS BAKER, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 18-11997-NMG |
| MIDLAND CREDIT MANAGEMENT, INC., SCHREIBER/COHEN, LLC, and LUSTIG GLASER & WILSON P.C., | ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANTS'
## MOTIONS TO DISMISS AND/OR COMPEL ARBITRATION

July 3, 2019

DEIN, U.S.M.J.

### I. INTRODUCTION

This is a putative class action suit pertaining to debt collection litigation pursued in state court. The named plaintiffs allegedly incurred credit card debt on accounts held with Barclays Bank Delaware ("Barclays"). Midland Funding LLC ("Midland Funding") later acquired the plaintiffs' accounts from Barclays, for whom defendant Midland Credit Management ("MCM") is a servicer and agent. The plaintiffs were subsequently sued by Midland Funding, allegedly at the direction of MCM, to collect outstanding credit card debt. Defendants Schreiber/Cohen, LLC ("Schreiber") and Lustig Glaser & Wilson P.C. ("Lustig") (collectively, "lawyer defendants"), are law firms that were retained by Midland Funding to sue the plaintiffs for the outstanding debts.

In each of the debt collection suits initiated by Midland Funding, judgment was ultimately entered in favor of the debtor. In the instant action, the plaintiffs allege that each debt collection suit was filed after the relevant statute of limitations period had run. They further allege that these suits caused them emotional distress and resulted in lost wages, legal fees, and other expenses. Accordingly, the plaintiffs have brought a Fair Debt Collection Practices Act ("FDCPA") claim (Count I) and a claim under Mass. Gen. Laws ch. 93A (Count II) against MCM and the lawyer defendants for initiating these allegedly time-barred debt collection suits.

This matter is before the court on "Defendants Schreiber/Cohen, LLC and Lustig, Glaser & Wilson, P.C.'s Motion to Dismiss Plaintiffs' Amended Complaint or, in the Alternative, Compel Arbitration or Abstention" (Docket No. 24) and "Defendant Midland Credit Management, Inc.'s Motion to Compel Arbitration, Dismiss the Case, and Strike Class Allegations, or in the Alternative, Motion to Stay" (Docket No. 26). As discussed herein, case law mandates the conclusion that a valid arbitration provision exists between the parties and that arbitration must be compelled. In addition, this court concludes that the class allegations of plaintiffs Barbosa and Anderson must be stricken. Therefore, this court recommends to the District Judge to whom this case is assigned that MCM's motion and the lawyer defendants' motion be ALLOWED IN PART. Specifically, this court recommends that the class action claims of plaintiffs Barbosa and Anderson be stricken, that the court compel arbitration pursuant to the plaintiffs' agreements with Barclays Bank Delaware, and that this action be dismissed without prejudice.

## II. STATEMENT OF FACTS

This court summarizes the facts as alleged in the plaintiffs' Amended Complaint (Docket No. 4 ("Amended Complaint")), with additional uncontested facts where noted. The named

plaintiffs are all Massachusetts residents who opened credit card accounts with Barclays.

(Amended Complaint ¶¶ 1-3; see Amended Complaint ¶¶ 20, 32, 41).  Each plaintiff's credit

card agreement with Barclays ("Barclays agreement" or "the agreement" or "cardmember

agreement") specified that Delaware law would apply to any disputes arising out of the

agreement.  (Id. ¶¶ 22, 36, 45).  Additionally, the cardmember agreement contained a provision

permitting the assignment of the cardmember account.  (See Docket No. 27-1, Ex. B at 2, Ex. E

at 2, Ex. H at 2).  The agreement also contained an arbitration provision allowing parties to elect

to resolve disputes via binding arbitration.[1]  (See id.).  The arbitration provision stated in

pertinent part:

> At the election of either you or us, any claim, dispute or controversy
> ("Claim") by either you or us against the other, or against the employees,
> agents or assigns of the other, arising from or relating in any way to this
> Agreement or your Account, or any transaction on your Account including
> (without limitation) Claims based on contract, tort (including intentional
> torts), fraud, agency, negligence, statutory or regulatory provisions or any
> other source of law and (except as specifically provided in this Agreement)
> Claims regarding the applicability of this arbitration clause or the validity of
> the entire Agreement, shall be resolved exclusively and finally by binding

---

[1] The Amended Complaint does not attach copies of the plaintiffs' agreements, although they are submitted with MCM's Motion to Dismiss.  For the most part, the parties' briefing assumes that the language contained within the arbitration provisions is identical across the named plaintiffs' cardmember agreements.  The lawyer defendants explicitly assert that "[e]ach agreement between Barclays and the Plaintiffs are identical."  (Docket No. 25 at 5 n.5).  While MCM and the plaintiffs do not state this outright, their briefs quote the plaintiffs' agreements interchangeably and, with one exception, none of the parties acknowledge differences between or draw distinctions among the individual plaintiffs' agreements.

Despite this, MCM's Motion to Dismiss includes exhibits purporting to contain the original cardmember agreements of each of the named plaintiffs, and these agreements differ from one another.  Upon review of the differences between these agreements, and in light of the parties' failure to draw distinctions between the agreements, this court concludes that the slight differences in language contained within the arbitration provision do not affect this court's analysis, except where noted. Otherwise, the court relies on the language as quoted in the parties' briefing. Because MCM does draw a distinction between the plaintiffs' agreements on the issue of class action waiver, this court addresses that issue separately below.

arbitration . . . .   For purposes of this provision, . . . "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns . . . . Claims made and remedies sought as part of a class action, private attorney general or other representative action (hereafter all included in the term "class action") are subject to arbitration on an individual basis, not on a class or representative basis. . . .

Alternatively, you and we may pursue a Claim within the jurisdiction of the Justice of the Peace Court in Delaware, or the equivalent court in your home jurisdiction (each a "Small Claims Court"), **provided** that the action remains in that court, is made on behalf of or against you only and is **not** made part of a class action, private attorney general action or other representative or collective action. . . .

. . . This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.  . . .

ARBITRATION WITH RESPECT TO A CLAIM IS BINDING AND NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IN ARBITRATION YOU AND WE WILL NOT HAVE THE RIGHTS THAT ARE PROVIDED IN COURT INCLUDING THE RIGHT TO A TRIAL BY JUDGE OR JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN PROCEEDINGS BROUGHT BY OTHERS SUCH AS CLASS ACTIONS OR SIMILAR PROCEEDINGS. IN ADDITION, THE RIGHT TO DISCOVERY AND THE RIGHT TO APPEAL ARE ALSO LIMITED OR ELIMINATED BY ARBITRATION. ALL OF THESE RIGHTS ARE WAIVED AND ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION.

(Id. Ex. B at 2 (emphasis in original); see id. Ex. E at 2, Ex. H at 2).  Barclays subsequently sold the plaintiffs' credit card accounts to Midland Funding.  (See Amended Complaint ¶¶ 20, 32, 41).

Midland Funding is a corporation that acquires charged-off consumer debts from creditors.  (Id. ¶ 7).  A debt that is "charged-off" is one that is deemed uncollectable by a creditor and written off as a loss.  (Id. ¶ 8).  Midland Funding utilizes MCM as its servicer and agent for collecting such charged-off consumer debts.  (Id. ¶ 9).  After acquiring the plaintiffs' credit card accounts from Barclays, Midland Funding initiated debt collection lawsuits against each of the plaintiffs.  (Id. ¶¶ 20, 33, 42).  MCM directed, approved, and/or ratified the

initiation of each of these suits and the lawyer defendants served as counsel for Midland Funding during the judicial proceedings.  (Id. ¶¶ 20, 21, 33, 34, 42, 43).  The specific factual allegations as to each of the plaintiffs are detailed below.

On October 10, 2017, Midland Funding sued Jackeline Barbosa in the Small Claims Session of the Roxbury Division of the Boston Municipal Court, with defendant Schreiber serving as counsel for Midland Funding.  (Id. ¶ 20).  Midland Funding alleged that Ms. Barbosa had last made a payment on her Barclays account on November 7, 2012.  (Id. ¶ 23).  The Boston Municipal Court issued judgment in favor of Ms. Barbosa, concluding that Midland Funding had failed to prove that it owned the debt at issue.  (Id. ¶ 30).

MCM placed for collection with Schreiber the charged-off consumer debt of Mark Anderson.  (Id. ¶ 32).  Subsequently, on March 23, 2018, Midland Funding sued Anderson in the Small Claims Session of the Roxbury Division of the Boston Municipal Court, with defendant Schreiber serving as counsel for Midland Funding.  (See id. ¶¶ 33, 35).  Midland Funding alleged that Mr. Anderson had last made a payment on his Barclays account on December 15, 2014. (Id. ¶ 35).  The Boston Municipal Court ultimately entered judgment in Mr. Anderson's favor.[2] (Id. ¶ 40).

MCM placed for collection with Lustig the charged-off consumer debt of Douglass Baker. (Id. ¶ 41).  Subsequently, on December 6, 2016, Midland Funding sued Baker in the Orange District Court, with defendant Lustig serving as counsel for Midland Funding.  (Id. ¶ 42).

---

[2] The Amended Complaint does not indicate the basis upon which Mr. Anderson prevailed.  The state court docket in that case, attached as Exhibit 5 to the lawyer defendants' memorandum in support of their motion to dismiss, indicates only that Midland Funding "failed to prove its claim by a preponderance of the evidence."  (Docket No. 25, Ex. 5 at 2).

Midland Funding alleged that Mr. Baker had last made a payment on his Barclays account on March 5, 2012.  (Id. ¶ 44).  The court ruled that Midland Funding's claim was barred by the Delaware statute of limitations and entered judgment in favor of Mr. Baker.  (Id. ¶ 50). Midland Funding has filed a notice of appeal in Mr. Baker's case.  (Id. ¶ 51).

The named plaintiffs allegedly suffered significant emotional distress as a result of the lawsuits initiated by Midland Funding, as well as financial costs and interruptions to their daily lives.  (Id. ¶¶ 24-27, 37-39, 46, 52).

Additional facts will be provided below where appropriate.

### III.  ANALYSIS[3]

The defendants[4] seek to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.[5]  They contend that under the terms of the cardmember agreement, they are entitled to invoke the arbitration provision and compel arbitration as to all of the plaintiffs' claims.  The plaintiffs assert both that the defendants are not entitled to invoke the arbitration provision and that, in the alternative, the defendants have waived their right to

---

[3] The plaintiffs urge this court to apply Delaware law as to particular issues, rather than Massachusetts or federal law.  This court concludes that, to the extent the plaintiffs seek the application of Delaware law, it does not impact the court's analysis of the relevant legal arguments.  Where the pertinent state law principles are the same, the court cites both Massachusetts and Delaware law.  Where the law differs, this court addresses such differences.

[4] MCM's motion seeks to compel arbitration and dismiss the case on this basis.  The lawyer defendants seek dismissal of the claims against them on substantive grounds but, in the alternative, request that this court compel arbitration.  Because this court concludes that compelling arbitration is appropriate, it does not reach the substantive arguments in the lawyer defendants' motion to dismiss.  As detailed herein, those arguments are properly for the arbitrator to evaluate in the first instance.

[5] As another court has astutely remarked, this case involves "'forced arbitration,' that one-sided species of arbitration unconscionably forced on vulnerable consumers and workers and almost universally reviled, enforceable only due to the mandate of a slim majority of the Supreme Court."  CellInfo, LLC v. Am. Tower Corp., 352 F. Supp. 3d 127, 131 (D. Mass. 2018) (footnote omitted).  This court is nevertheless bound to apply that mandate.

arbitrate by engaging in prior litigation conduct – specifically, their debt collection activities. MCM characterizes these arguments as pertaining to the arbitrability of the dispute and contends that the arbitration agreement explicitly delegates such issues of arbitrability to the arbitrator to decide.

"As a general matter, the division of labor between courts and arbitrators is a matter of contract interpretation." Boateng v. Gen. Dynamics Corp., 473 F. Supp. 2d 241, 250 (D. Mass. 2007). Because contracts may be silent as to the division of labor on a particular matter, "[c]ertain presumptions have been constructed to aid in the resolution of these issues of division of responsibility." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 9 (1st Cir. 2005). While "procedural" questions are presumptively for the arbitrator to decide, the issue of whether a particular dispute is subject to arbitration is presumptively for the court to decide, "[u]nless the parties clearly and unmistakably provide otherwise." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986). This is because where parties "are not likely to have thought that they had agreed that an arbitrator [would decide a gateway matter]," referring "the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84, 123 S. Ct. 588, 592, 154 L. Ed. 2d 491 (2002). For the same reason, questions about whether an arbitration provision binds a party that did not sign the agreement are presumptively for the court to decide as well. See Kristian v. Comcast Corp., 446 F.3d 25, 39 (1st Cir. 2006).

As mentioned above, if there exists "clear and unmistakable" evidence that a threshold question as to arbitrability was delegated to the arbitrator, this court must compel arbitration

on the question of whether the dispute should be arbitrated.  See Henry Schein, Inc. v. Archer &

White Sales, Inc., 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019).  "Generally speaking, a court

must look to the language of the parties' agreement to determine whether the agreement to

arbitrate extends to questions of arbitrability."  Patton v. Johnson, 915 F.3d 827, 835 (1st Cir.

2019).  Here, the arbitration provision states that "[c]laims regarding the applicability" of the

arbitration provision "shall be resolved exclusively" through arbitration.  (Docket No. 27-1, Ex. B

at 2, Ex. E at 2, Ex. H at 2).  MCM contends that this language clearly and unmistakably

delegates all issues of arbitrability to the arbitrator.  However, as a matter of contract law, "a

delegation clause granting authority to an arbitrator to decide issues of application,

enforceability, or interpretation are only applicable to the parties of the agreement."  In re

Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig., No. 11MD2286-MMA (MDD), 2019 WL

398169, at *6 (S.D. Cal. Jan. 31, 2019).  It follows that "the Court must first decide which parties

are bound by the delegation clause[] before the arbitrator can determine the applicability,

enforceability, and interpretation of the arbitration agreements."  Id.  Thus, even though the

arbitration provision at issue here contains a delegation clause as to the "applicability" of the

arbitration provision, this court is still tasked with evaluating whether the defendants fall within

the terms of the provision at all.

### Defendants' Ability to Invoke Arbitration Clause

The arbitration provision provides that "[a]t the election of either you or us, any claim,

dispute or controversy ('Claim') by either you or us against the other, or against the employees,

agents or assigns of the other, arising from or relating in any way to this Agreement or your

Account . . . shall be resolved exclusively and finally by binding arbitration[.]"  (Docket No. 27-1,

Ex. B at 2; see id. Ex. E at 2, Ex. H at 2).  The term "us" is defined to include Barclays's "employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns[.]"  (Id.).  The plaintiffs argue that because the definition of "us" does not explicitly contemplate multiple layers of assignment to cover agents or assigns of Barclays's agents and assigns, it cannot extend to the defendants.  This court disagrees.[6]

"A non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract."  See Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 62 n.2 (1st Cir. 2003).  Under such ordinary state-law principles, an assignee "stands in the shoes of the assignor and is in the same position as the assignor would have been in without the assignment."  Rubenstein v. Royal Ins. Co. of Am., 45 Mass. App. Ct. 244, 246, 696 N.E.2d 973, 974 (1998); see Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co., No. CV 14-1420-RGA, 2015 WL 6675537, at *5 (D. Del. Nov. 2, 2015) (same).  Such assignment "cannot alter a contract's bargained-for remedial measures, for then the assignment would change the very nature of the rights assigned."  GMAC Commercial Credit LLC v. Springs Indus., Inc., 171 F. Supp. 2d 209, 216 (S.D.N.Y. 2001) (explaining, in the context of New York contract law, why assignees enjoy the same rights as assignors).

The Barclays agreement allows for Barclays to assign the cardmember's "Account, any sums due on [the cardmember's] Account, this Agreement or [Barclays's] rights or obligations under this Agreement."  (Docket No. 27-1, Ex. B at 2, E at 2, H at 2).  The entity to whom the

---

[6] This court notes that Baker's arbitration provision does not contain the phrase "[a]t the election of either you or us," a fact that the parties appear to have overlooked.  See supra, note 1.  Thus, Baker's arbitration provision is not limited to invocation by individuals who fall within the definition of "you" or "us."  Even with such a contractual restriction, however, the other to plaintiffs' arbitration provisions still permit the defendants to elect to arbitrate, as discussed below.

assignment is made "shall be entitled to *all* of [Barclays's] rights under this Agreement, to the extent assigned." (Id. (emphasis added)). Indeed, the record here indicates that Barclays transferred all of its rights to the plaintiffs' accounts to Midland Funding. The bills of sale as to the named plaintiffs' accounts state that Barclays "hereby assigns, conveys, grants and delivers to [Midland Funding] . . . *all* rights title and interest of [Barclays] in and to" the plaintiffs' accounts.[7] (Id. Exs. A, D, G (emphasis added)). Accordingly, Midland Funding was assigned the very rights that Barclays enjoyed under the cardmember agreement. Because the agreement entitled Barclays's affiliates, agents, and assigns to invoke the arbitration provision, and Midland Funding now stands in Barclays's shoes as an assignee, Midland Funding's affiliates, agents, and assigns are similarly entitled to invoke the provision. See Lance v. Midland Credit Mgmt., Inc., 375 F. Supp. 3d 604, 613 (E.D. Pa. 2019) (finding that right to compel arbitration provision could extend to an assignee, even in the absence of an arbitration clause specifically extending the right to "successors and assigns"); Mounts v. Midland Funding LLC, 257 F. Supp. 3d 930, 940 (E.D. Tenn. 2017) (concluding that MCM was entitled to compel arbitration as affiliate of Midland Funding where assignment of account to Midland Funding entitled it to stand in the shoes of assignor). See generally Laborers International Union of North America v. HSA Contractors, Inc., 728 F. Supp. 519, 523 n.3 (E.D. Wis. 1989) (summarizing case law that contract assignees can be bound to arbitration agreements by fact of their assignment).

---

[7] Although the language in the bills of sale refers to computer files and credit balances to identify the plaintiffs' accounts, rather than naming the plaintiffs outright, the plaintiffs are not contesting that Barclays validly sold their accounts to Midland Funding. (See Docket No. 27-1, Exs. A, D, G). As discussed below, they do, however, contest whether Midland Funding validly assigned these accounts to MCM.

**Defendants' Status as Agents or Assignees**

The plaintiffs argue that, even if the arbitration provision may be invoked by Midland

Funding's agents or assigns, the defendants have not adequately demonstrated that they are

agents or assigns of Midland Funding.  As to MCM, the plaintiffs contest whether MCM was

assigned any rights to the plaintiffs' accounts.  (Docket No. 35 at 9).  However, it is undisputed

that MCM is an affiliate of Midland Funding and the Amended Complaint explicitly states that

MCM acts as Midland Funding's "agent."  (See id. at 11; Amended Complaint ¶ 9).  As discussed

above, the arbitration provision's definition of "us" extends to Midland Funding's "employees,

parents, subsidiaries, affiliates, beneficiaries, agents and assigns."  Accordingly, because the

plaintiffs concede that MCM is an affiliate of Midland Funding, and the Amended Complaint

explicitly states that MCM acts as Midland Funding's "agent," MCM may elect to invoke the

arbitration provision.[8]

The plaintiffs also argue that the lawyer defendants are not agents or assigns, but rather

independent contractors of MCM and/or Midland Funding.  The plaintiffs' argument

presupposes that the roles of agent and independent contractor are mutually exclusive.  They

are not.  Under the Restatement of Agency, which the plaintiffs contend should control here,

"One who contracts to act on behalf of another and subject to the other's control except with

respect to his physical conduct is an agent and also an independent contractor."  Restatement

(Second) of Agency § 14N (Am. Law Inst. 1958).  As the Restatement explains,

---

[8] In light of this court's conclusion that MCM, as an affiliate of Midland Funding, is entitled to invoke the arbitration provision, the scope and validity of Midland Funding's assignment to MCM is irrelevant. Consequently, this court need not address the plaintiffs' request to conduct discovery on the assignment of rights to MCM.  (See Docket No. 35 at 9 n. 5).

> most of the persons known as agents, that is, brokers, factors, *attorneys*,
> collection agencies, and selling agencies are independent contractors as the
> term is used in the Restatement of this Subject, since they are contractors
> but, although employed to perform services, are not subject to the control or
> right to control of the principal with respect to their physical conduct in the
> performance of the services.  However, they fall within the category of
> agents.  They are fiduciaries; they owe to the principal the basic obligations
> of agency: loyalty and obedience.

Id. cmt. a (emphasis added).  By contrast, "[a] person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other, is a non-agent contractor."  Id. cmt. b.  As the Amended Complaint makes clear, the named plaintiffs seek to hold the lawyer defendants liable for conduct the lawyer defendants allegedly engaged in "on behalf of" Midland Funding in their role as counsel.  (Amended Complaint ¶¶ 12, 20, 33, 42).  The claims made against the lawyer defendants thus pertain to their conduct as agents for Midland Funding.  Accordingly, as agents for Midland Funding, they fall within the arbitration provision's definition of "us" and may elect to compel arbitration. See Sweiger v. Calvary Portfolio Servs., LLC, No. 2:11·CV·1631, 2012 WL 1940678, at *4 & n.3 (W.D. Pa. May 29, 2012) (finding that debt collector's law firm could enforce arbitration agreement as an "agent" of the debt collector). Brown v. Sklar-Markind, No. CIV.A. 14-0266, 2014 WL 5803135, at *13 (W.D. Pa. Nov. 7, 2014) (same); see also Hoefs v. CACV of Colo., LLC, 365 F. Supp. 2d 69, 76 (D. Mass. 2005) (law firm and individual attorney were agents of debt collector for purposes of arbitration provision); Zambrana v. Pressler & Pressler, LLP, No. 16-CV-2907 (VEC), 2016 WL 7046820, at *6 (S.D.N.Y. Dec. 2, 2016) (finding that the law firm defendant

"as well as the individually-named lawyers, may enforce the arbitration agreement as agents of [assignee of credit card account].").[9]

## Waiver

Having concluded that the defendants are contractually entitled to invoke the arbitration provision, this court next considers the argument that the defendants have waived their right to arbitrate because they engaged in prior litigation against the plaintiffs. The First Circuit has expressly held that arbitration waiver issues arising out of litigation-related activity are presumptively for the court to decide, not the arbitrator. See Marie, 402 F.3d at 14-15. Here, where the arbitration provision delegates to the arbitrator issues pertaining to the "applicability" of the arbitration provision but does not refer to waiver or other similar terms, it does not evince clear and unmistakable evidence of an intent to delegate the issue of waiver to the arbitrator. See id. (holding that no clear and unmistakable intent existed where arbitration provision contained "no references to waiver or similar terms"). Accordingly, this court must decide the issue of whether MCM has waived its ability to invoke the arbitration provision by previously bringing suit against the plaintiffs.

There is no bright-line rule for determining whether a party has waived their arbitration rights. See Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 951 (1st Cir. 2014). Rather, courts examine a number of factors to determine whether waiver has occurred in a particular case, including:

> (1) whether the parties participated in a lawsuit or took other action incon-
> sistent with arbitration; (2) whether the "litigation machinery has been

---

[9] Because this court concludes that MCM has the right to invoke the arbitration provision, it need not address MCM's argument that the plaintiffs should be equitably estopped from avoiding arbitration. (See Docket No. 27 at 16).

substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the court by filing a counterclaim"; (5) whether discovery not available in arbitration has occurred; and, (6) whether the party asserting waiver has suffered prejudice."

FPE Found. v. Cohen, 801 F.3d 25, 29 (1st Cir. 2015) (quoting Restoration Pres. Masonry, Inc., 325 F.3d at 60-61).  In weighing these factors, "reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration."  In Re Tyco Int'l Ltd. Sec. Litig., 422 F.3d 41, 44 (1st Cir. 2005).

The plaintiffs rely on the three debt collection suits brought against the named plaintiffs in state court to support the contention that the defendants waived their right to arbitrate.  Although MCM does not appear to have been a party to the debt collection suits, the Amended Complaint alleges that such suits were "initiated at the direction of MCM, [were] approved by MCM, and/or [were] ratified by MCM."  (Amended Complaint ¶¶ 21, 34, 43).  The lawyer defendants were not named parties to those suits but acted as counsel on behalf of Midland Funding in the prior suits.  (Id. ¶¶ 20, 33, 42).  To the extent that the defendants participated in these suits, however, their conduct is not entirely inconsistent with the parties' arbitration rights.  The arbitration provision "does not require that the parties either litigate all claims or arbitrate all claims."  Schwartz v. CACH, LLC, No. CIV.A. 13-12644-FDS, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014).  Rather, the arbitration provision explicitly permits the parties to pursue claims in small claims court.  As two of the three suits against the named plaintiffs were brought in small claims court, these suits appear to have been brought in a manner explicitly contemplated by the terms of the arbitration provision.  See Garcia v. Weltman, Weinberg &

Reis Co., No. 2:13-CV-14362, 2014 WL 1746522, at *6 (E.D. Mich. Apr. 30, 2014) (explaining that court could not locate any authority to suggest that "commencing and participating in a separate state court debt collection action that was expressly contemplated by an arbitration agreement waived a creditor's right to arbitrate unfair debt collection practice claims arising out of the creditor's allegedly improper conduct during and subsequent to the state court proceedings" (footnote omitted)); Cage v. CACH, LLC, No. C13-01741RSL, 2014 WL 2170431, at *1 (W.D. Wash. May 22, 2014) ("Bringing a lawsuit for debt collection may result in defendants' waiver of arbitration for that case, but it does not bar plaintiffs from compelling arbitration in that action or bar defendants from invoking arbitration in all future separate causes of action that plaintiffs assert against them.").

The remaining factors weigh significantly in favor of finding no waiver.  With respect to the second and third factors cited by the First Circuit, judgment has already been entered in each of the debt collection suits that were filed against the named plaintiffs.  Accordingly, this case does not implicate the kinds of waiver-related concerns about delay and trial preparation that would arise in a case where a party's prior litigation conduct occurred in the very case that the party later sought to arbitrate.  See, e.g., In re Citigroup, Inc., 376 F.3d 23, 27 (1st Cir. 2004) (concluding that waiver had occurred where party sought to compel arbitration in litigation three years after complaint was filed); Restoration Pres. Masonry, Inc., 325 F.3d at 61 (holding that party had waived right to compel arbitration where it sought to do so four years after litigation had commenced).  Similarly, the fourth factor does not support a finding of waiver, since the defendants have not filed any counterclaims, and the fifth factor has no application

here either since the parties have not engaged in discovery beyond that which would be available in arbitration.

Lastly, the plaintiffs have not established any prejudice that they would suffer as a result of being compelled to arbitration.  While "prejudice ordinarily may be inferred from a protracted delay in the assertion of arbitral rights when that delay is accompanied by sufficient litigation activity," the record does not indicate such "protracted delay" here.  Joca-Roca Real Estate, 772 F.3d at 949.  The defendants' motions to compel arbitration were filed in response to the plaintiffs' complaint.  While the defendants did receive an extension on the deadline to file these motions, it was assented to by the plaintiffs and permitted by the court.  (See Docket Nos. 11, 13, 15, 16, 18, 19, 20, 21).  Nor have the plaintiffs demonstrated any other manner of prejudice resulting from the defendant's prior litigation conduct.  On this record, the court cannot conclude that the plaintiffs have established prejudice.

The plaintiffs do not address the First Circuit waiver factors, urging instead that Delaware law should apply on the issue of waiver.  However, much like the law within this circuit, Delaware courts require a showing that a party took "action inconsistent with the right to arbitration." Falcon Steel Co. v. Weber Eng'g Co., 517 A.2d 281, 288 (Del. Ch. 1986); see Unifirst Corp. v. Holloway's Trucking, No. CIV. A. 06-07-003, 2009 WL 2426329, at *2 (Del. Com. Pl. Aug. 5, 2009) (outlining principles of Delaware law as to waiver of arbitration and comparing to New York law).   Delaware courts also require that waiver be established by "clear and convincing evidence[.]" Nutzz.com, LLC v. Vertrue Inc., No. CIV.A. 1231-N, 2006 WL 2220971, at *8 (Del. Ch. July 25, 2006); see James Julian, Inc. v. Raytheon Serv. Co., 424 A.2d 665, 668 (Del. Ch. 1980) ("There is a strong public policy favoring arbitration and, therefore, waiver is not to

be lightly inferred.").  As discussed, the arbitration provision explicitly contemplated that a party could choose to litigate claims in small claims court.  See James Julian, Inc., 424 A.2d at 668 ("No waiver will be inferred simply because a party does not rely exclusively on the arbitration provisions in a contract.").  Further, under Delaware law "the party asserting waiver must demonstrate prejudice."  Anadarko Petroleum Corp. v. Panhandle E. Corp., C.A. No. 8738, 1987 WL 13520, at *8 (Del. Ch. July 7, 1987).  Frequently, prejudice under Delaware law consists of electing to engage in substantial discovery as part of litigation proceedings prior to moving to compel arbitration.  See Nutzz.com, LLC, 2006 WL 2220971, at *8-9; Zaret v. Warners Moving & Storage, No. CIV. A. 13868, 1995 WL 56708, at *2 (Del. Ch. Feb. 3, 1995) (finding waiver where party "filed a lawsuit, resisted [the opposing party's] efforts to remove the case to federal court, and participated in discovery over a six month period"); Wilshire Rest. Grp. v. Ramada, Inc., No. C.A. 11506, 1990 WL 195910, at *3 (Del. Ch. Dec. 5, 1990) (finding waiver where, after seeking to compel arbitration, litigant took "no steps to prosecute its arbitration remedy" and instead "pursued extensive discovery in the Superior Court over the next four months").  However, as discussed, no such showing has been made here.

The plaintiffs direct this court to a number of state court cases that found waiver in circumstances similar to those at issue here.  In each of the cited cases, the party seeking to compel arbitration had previously filed debt collection suits against the party opposing arbitration.  Indeed, these cases persuasively explain that prior debt collection litigation may constitute a waiver even when it ostensibly involved different claims from the ones currently at issue.  Cain v. Midland Funding, LLC, 452 Md. 141, 158-59, 156 A.3d 807, 817 (2017) ("if Midland had not pursued its 2009 collection action, [the plaintiff's] current claims would not

exist.  Thus, the claims are part of 'one basic issue' of whether Midland was entitled to a money judgment against [the plaintiff]"); Nelson v. Liberty Acquisitions Servicing LLC, 374 P.3d 27, 30 (Utah Ct. App. 2016) ("if the [defendants], as Plaintiffs allege in the 2014 Action, filed time-barred collection actions, the FDCPA and UCSPA violation claims did not just exist at the time of the Collection Actions but were in fact created by the filing of the Collection Actions"); Principal Investments v. Harrison, 132 Nev. Adv. Op. 2, 366 P.3d 688, 697 (2016) ("The claims the named plaintiffs have asserted in district court arise out of, and are integrally related to, the litigation [the debt collector] conducted in justice court.").  Notably, both Cain and Principal Investments involved arbitration provisions containing small claims clauses akin to the one present here.

These cases, however, differ from the instant case in one significant respect.  Unlike the instant case, those cited by the plaintiffs either did not require a showing of prejudice or established prejudice under factually distinct circumstances from those at issue here.  The court in Cain explicitly held that under Maryland law, unlike the FAA, litigants need not demonstrate prejudice.  452 Md. at 160 n.17, 163, 156 A.3d at 818, 820; see Collins v. Discover Fin. Servs., No. CV PX-17-3011, 2018 WL 2087392, at *3 (D. Md. May 4, 2018) ("As this Court has recognized several times since Cain was decided in 2017, Cain involved compelling arbitration under the Maryland Uniform Arbitration Act, not the FAA.").  Similarly, the court in Nelson declined to address the issue of whether the plaintiffs had adequately shown prejudice, deeming the argument unpreserved on appeal.  374 P.3d at 33.  The issue of prejudice is only substantively addressed in Principal Investments.  There, the plaintiffs demonstrated prejudice on the basis of the fact that they were wholly denied the ability to appear and defend themselves in the prior debt collection suits, as they had never received service of process, and

default judgment had been entered against them.  Principal Investments, 366 P.3d at 697-98.

Within that context, the court concluded that, despite the existence of the small claims

provision, it would be prejudicial to the plaintiffs to then "require arbitration of claims seeking

to set that judgment aside, to enjoin its enforcement, and otherwise to remediate its improper

entry."  Id.  By contrast, the plaintiffs in the instant case were able to—and did—litigate their

debt collection cases.  In the absence of evidence of prejudice, this court cannot conclude that

the defendants' prior litigation conduct constituted a waiver of their right to compel

arbitration.  See Creative Sols. Grp. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) ("Waiver is

not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant

prejudice to a party cannot carry the day." (internal quotations and citation omitted, alterations

in the original)); Joca-Roca Real Estate, 772 F.3d at 949 ("prejudice is essential for a waiver").

Accordingly, this court finds that the defendants have not waived the right to compel

arbitration.

### Class Action Arbitrability

MCM asks this court to strike all class allegations before sending the matter to arbitra-

tion.  The law appears to be unsettled on whether courts or arbitrators are presumptively

charged with determining whether class waiver provisions in arbitration agreements are valid.

See Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd., 683 F.3d 18, 24 n.4 (1st Cir. 2012)

(acknowledging that the question remains open).  Recently, the Supreme Court explicitly stated

that it "has not decided whether the availability of class arbitration is a so-called 'question of

arbitrability,'" presumptively for the court to decide.  Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407,

1417 n.4 (2019); see Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 n.2, 133 S. Ct. 2064,

2068, 186 L. Ed. 2d 113 (2013).  The issue does not need to be resolved in the instant case, however, given the language of the parties' agreement.

As noted above, the arbitration agreement delegates to the arbitrator "Claims regarding the applicability" of the arbitration agreement.  While the plaintiffs argue that this means that the availability of class actions should be left to the arbitrator, a subsequent clause in the arbitration agreements of plaintiffs Barbosa and Anderson negates that conclusion.  That provision states:

> No class actions joinder or consolidation of any Claim with a Claim of any other person or entity shall be allowable in arbitration, without the written consent of both you and us. In the event that there is a dispute about whether limiting arbitration of the parties' dispute to non-class proceedings is enforceable under applicable law, then that question shall be resolved by litigation in a court rather than by the arbitrator[.]

(Docket No. 27-1, Ex. B at 2, Ex. E at 2 (emphasis removed)).  Because the arbitration agreements applicable to Barbosa and Anderson explicitly state that disputes as to the validity of the class waiver provision are to be resolved by a court, rather than by the arbitrator, this court must reach the issue.  See Khath v. Midland Funding, LLC, 334 F. Supp. 3d 499, 516 (D. Mass. 2018).  Additionally, because the language quoted above plainly prohibits class arbitration, and the plaintiffs have not advanced any arguments as to why this language should not be binding on them,[10] this court is compelled to conclude that plaintiffs Barbosa and

---

[10] For example, a class action waiver may be unenforceable "where [its] inclusion in an agreement was obscured by conduct of the party seeking to obtain the class action waiver that raises 'unconscionability concerns.'"  Christensen v. Barclays Bank Del., No. 1:18-CV-12280-ADB, 2019 WL 1921710, at *6 (D. Mass. Apr. 30, 2019) (citation omitted).  No such conduct is alleged here.  Moreover, in the last decade, the Supreme Court has expressly defended the validity of class action waivers and spurned class arbitration.  See Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 234, 133 S. Ct. 2304, 2309-10, 186 L. Ed. 2d 417 (2013); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 351, 131 S. Ct. 1740, 1753, 179 L. Ed. 2d 742 (2011) (explicitly rejecting the argument that class arbitration is "necessary to prosecute

Anderson cannot arbitrate on a class-wide basis.  As to plaintiff Baker, whose arbitration provision does not explicitly delegate the issue of class waiver to the court, MCM has indicated that it does not object to allowing the arbitrator to decide the class action waiver issue in the first instance.  (See Docket No. 51 at 6-7 & n.4).[11]  Accordingly, the class allegations should be stricken as to plaintiffs Barbosa and Anderson, and the class waiver issue, as it pertains to plaintiff Baker, should be left to the arbitrator.

### Entitlement to Dismissal

Finally, MCM seeks dismissal of the case.  "Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable."  Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010) (emphasis and internal citations omitted).  In light of the court's determination that the defendants are entitled to arbitrate the plaintiffs' claims, this court recommends that the complaint be dismissed.  The dismissal should be without prejudice in the event that a return to the court following the arbitration is appropriate.

### IV. CONCLUSION

---

small-dollar claims that might otherwise slip through the legal system").  Indeed, the recent Supreme Court "has presumptively barred classwide arbitration, even where that means that some forms of illegal conduct will never be remedied. This is the case, for example, when a corporation has fraudulently bilked thousands of consumers out of amounts of money too small to warrant individual litigation, while its standard contracts require that all disputes be arbitrated on a one-by-one basis." Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C., 77 F. Supp. 3d 237, 248 n.5 (D. Mass. 2015) (quoting David Cole, The Anti-Court Court, New York Review of Books, Aug 14, 2014).

[11] On page 7 of its reply brief, MCM mistakenly refers to plaintiff Anderson, rather than plaintiff Baker, as the named plaintiff whose arbitration provision does not contain a class waiver delegation clause.

For all the reasons detailed above, this court recommends that "Defendants

Schreiber/Cohen, LLC and Lustig, Glaser & Wilson, P.C.'s Motion to Dismiss Plaintiffs' Amended

Complaint or, in the Alternative, Compel Arbitration or Abstention" (Docket No. 24) and

"Defendant Midland Credit Management, Inc.'s Motion to Compel Arbitration, Dismiss the

Case, and Strike Class Allegations, or in the Alternative, Motion to Stay" (Docket No. 26) be

ALLOWED IN PART.  Specifically, this court recommends that plaintiffs' class action claims be

stricken as to plaintiffs Barbosa and Anderson, that the court compel arbitration pursuant to

the plaintiffs' agreements with Barclays Bank Delaware, and that this action be dismissed

without prejudice.[12]


/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[12]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).